## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| _____ | : | |
| | : | |
| | : | Civil Action No. |
| | : | |
| | : | |
| AVENTUS HEALTH, LLC; | : | |
| ABL MEDICAL CARE, LLC; RD | : | |
| HEALTH DIAGNOSTICS, LLC; | : | |
| KD MEDICAL CHOICE, LLC; and | : | |
| SEAN M. BYGRAVE, individually | : | |
| and on behalf of all others similarly | : | |
| situated, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | **CLASS ACTION COMPLAINT** |
| | : | **AND JURY DEMAND** |
| | : | |
| v. | : | |
| | : | |
| UNITED HEALTHCARE, INC., | : | |
| UNITED HEALTHCARE | : | |
| SERVICES INC., OPTUMHEALTH | : | |
| CARE SOLUTIONS, INC. and | : | |
| NEIGHBORHOOD HEALTH | : | |
| PARTNERSHIP, INC. | : | |
| | : | |
| Defendants. | : | |
| _____ | | |

Plaintiffs Aventus Health, LLC ("**Aventus**"), ABL Medical Care, LLC

("**ABL**"), KD Medical Choice, LLC ("**KD**"), and RD Health Diagnostics, LLC

("**RD**"), (ABL, KD and RD collectively, the "**Laboratories**"), and Plaintiff Sean M. Bygrave (the "**Individual Plaintiff**" or the "**Class Representative**") (Aventus, the Laboratories and the Class Representative, together the "**Plaintiffs**") by and through their attorneys, by way of Complaint against Defendants United Healthcare, Inc. ("**UHC**"), United HealthCare Services, Inc. ("**UHCS**"), OptumHealth Care Solutions, Inc. (**"Optum"**) and Neighborhood Health Partnership, Inc. ("**NHP**") (UHC, UHCS, Optum and NHP collectively, "**Defendants**" or **"United"**), allege and say:

## THE PARTIES

1. ABL is a limited liability company organized and existing under the laws of the Florida, with its principal place of business at 1341 Sundial Point, Winter Springs, FL 32708.

2. KD is a limited liability company organized and existing under the laws of Florida with its principal place of business at 1060 Willa Springs Dr., Winter Springs, FL 32708.

3. RD is a limited liability company organized and existing under the laws of Florida with its principal place of business at 1977 Alafaya Trail #1121, Oviedo, FL 32765.

4. ABL, KD and RD are owned by Aventus, an integrated healthcare services company, including laboratories and pharmacies, and partner with healthcare providers to meet the needs of their patients.

5.      Aventus's corporate headquarters are located at 11301 Corporate Blvd Building, 400 STE 315, Orlando, FL 32817.

6.      The Laboratories are CLIA-certified laboratories that requested emergency use authorization and that have been authorized and approved to render and be reimbursed for COVID-19 testing services.

7.      The Individual Plaintiff resides in Oviedo, Florida, and was an insured under a group or individual health insurance plan issued and/or administered by one of the Defendants in Florida who received a COVID-19 diagnostic test.

8.      The Individual Plaintiff is also the class representative for a class consisting of all insureds under a group or individual health insurance plan issued and/or administered by one of the Defendants in Florida who received a COVID-19 diagnostic test from one of the Plaintiffs.

9.      UHC is a publicly traded Delaware corporation with its principal place of business in Minneapolis, Minnesota. It issues group and individual health insurance plans and administers private employment-based group health plans (**"ERISA Plans"**) through its various wholly owned and controlled subsidiaries, including, but not limited to, UHCS.

10.     UHCS is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Minnetonka, Minnesota. It is a for-profit corporation operating in the State of Florida, and issues group and individual

health insurance plans and administers ERISA Plans that are funded by plan sponsors in Florida. It is a wholly owned subsidiary of UHC.

11.    Optum is a corporation organized under the laws of Minnesota with a principal place of business there.  Upon information and belief, Optum is a foreign for-profit corporation operating in Florida, administers health insurance plans funded by plan sponsors in Florida and is a wholly owned subsidiary of UHC.

12.    NHP is a corporation organized under the laws of Florida, with its principal place of business in Miami, Florida. It is a for-profit corporation operating in the State of Florida, and issues group and individual health insurance plans and administers ERISA Plans that are funded by plan sponsors in Florida. It is a wholly owned subsidiary of UHC.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this dispute under 28 U.S.C. § 1331 because Plaintiffs assert federal claims against Defendants under the Families First Coronavirus Response Act ("**FFCRA**"), the Coronavirus Aid, Relief, and Economic Security ("**CARES**") Act, the Employee Retirement Income Security Act ("**ERISA**") and the Class Action Fairness Act ("**CAFA**").

14.    This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. Sec. 1367(a) because they are so related to Plaintiffs'

federal claims that they form a part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), because Defendants reside in this judicial district, and under 28 U.S.C. § 1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## **BACKGROUND**

16. Despite reported profits of $15.4 billion in 2020, Defendants are purposely failing to meet their obligations to cover COVID testing. Indeed, while businesses across the country continue to grapple with economic loss in the face of a global pandemic, United reported an almost 12% increase in profits to $17.3 billion in 2021.

17. A New York Times article specifically called out United for its shockingly low reimbursement rates and failure to fully cover COVID tests, noting that the American Academy of Pediatrics and the California Medical Association have been unable to receive satisfactory responses from United concerning these issues. *See Sarah Kliff, NEW YORK TIMES*, "Burned by Low Reimbursements, Some Doctors Stop Testing for Covid" (Feb. 3, 2021).

18. Congress took special and extraordinary steps during the pandemic to require health plans and health insurance issuers like United to cover and pay the cost of coronavirus testing as a mechanism to fight the pandemic.

19. As part of these efforts, Congress prohibited health plans and health insurance issuers from imposing any prior authorization or other medical management requirements on testing for the diagnosis of COVID-19, whether obtained in or out-of-network (**"OON"**) (*See* FFCRA § 6001(a)).  Defendants' intentional and willful conduct are the antithesis of what Congress intended for health plans to do to combat COVID.

20. At issue in this dispute is Defendants' failure to pay over 34,000 "clean" OOC claims for COVID-19 diagnostic testing, including Rapid, PCR, COVID-19 Variant and Antibody tests, that Plaintiffs provided and continue to provide to Defendants' members and beneficiaries.

21. In addition to failing to reimburse Aventus and the Laboratories for providing covered COVID testing services, Defendants have acted, and continue to act, in bad faith by erecting hurdles to payment without justification.

22. These actions have included setting up complex processes and procedures to deny or underpay claims for arbitrary reasons, engaging in a paperwork war of attrition in an effort to wear down Aventus and the Laboratories, turning United's internal administrative appeals procedures into a joke and thereby

rendering the administrative appeals process functionally meritless, and

ultimately engaging in unscrupulous and fraudulent conduct for its own financial

benefit during the COVID-19 pandemic.

## RELATIONSHIP BETWEEN THE PARTIES

23.   ABL is a Florida-based independent medical laboratory that offers an array of

diagnostic services, is accredited by the Commission on Office Laboratory

Accreditation ("**COLA**"), the College of American Pathologies ("**CAP**") and is

certified under the federal Clinical Laboratory Improvement Amendments

("**CLIA**") with license number 10D2198288.

24.   RD is a Florida-based independent medical laboratory that offers an array of

diagnostic services, and is accredited and certified by COLA, CAP, and CLIA,

with license number 10D2137170.

25.   KD is a Florida-based independent medical laboratory that offers an array of

diagnostic services, and is accredited and certified by COLA, CAP, and CLIA,

with license number 10D2137145.

26.   Defendants are in the business of issuing group and individual health insurance

coverage and administering private employment-based group health plans and

non-federal governmental plans, such as plans sponsored by states and local

governments, for their insureds, plan members, and beneficiaries within the State

of Florida.

27.   Defendants are required to make benefit payments from their own assets (for fully insured plans) or the assets of the relevant plan (for self-funded plans) when an individual covered by one of the plans obtains healthcare services covered by the plan.

28.   Aventus and the Laboratories are non-participating, or OON, providers of services in that they do not have a contract with Defendants requiring them to accept Defendants' prohibitively low reimbursement rates for the services provided to Defendants' insureds, members or beneficiaries.

29.   Non-participating, or OON, status was maintained by Aventus and the Laboratories to avoid Defendants' prohibitively low rates and to ensure that Aventus and the Laboratories maintained sufficient cash flow to keep providing COVID-19 testing services for their communities.

30.   As OON providers, Aventus and/or the Laboratories obtain an assignment of benefits (an "**Assignment**" or "**AOB**") from Defendants' insureds, members and beneficiaries.

31.   The Assignments grant Aventus and/or the Laboratories the right to receive direct payments owed to Defendants' insureds, members and beneficiaries and, therefore, the right to pursue legal action to collect same.  A representative AOB Form that Aventus and/or the Laboratories receives from Defendants' plan

participants is attached hereto and incorporated herein by reference as Exhibit **"A."**

32. Aventus and/or the Laboratories submitted, and continue to submit, claims for reimbursement for the testing services administered to Defendants' insureds, members and their beneficiaries, which include COVID-19 diagnostic and related testing.

33. Consistent with the ruling by the United States District Court for the Southern District of Texas in *Diagnostic Affiliates of Northeast Hou, LLC, v. United Healthcare Services Inc*., Civil Action No. 2:21-CV-00131, dated January 18, 2022, Plaintiffs have an "implied private right of action to enforce the provisions of the FFCRA and CARES Act reimbursement requirement."

34. Moreover, Plaintiffs have a private right of action to seek reimbursement pursuant to ERISA.

## THE ROLE OF AVENTUS AND THE LABORATORIES IN FIGHTING THE COVID-19 PANDEMIC

35. From the start of the COVID-19 pandemic, Aventus and the Laboratories have offered COVID-19 testing for the diagnosis and detection of the virus that causes COVID-19. Aventus and the Laboratories also later offered COVID-19 antibody testing.

36.   Aventus and the Laboratories began offering and focusing their resources on COVID-19 testing services as part of their commitment to combatting the COVID-19 pandemic in Florida and nationally.

37.   Throughout the pandemic, Aventus and the Laboratories have offered COVID-19 testing services 24 hours per day and seven days a week to help clinicians quickly and accurately diagnose COVID-19, detect the presence of COVID-19 antibodies and provide patients with timely infection information.

38.   Aventus joined forces with the University of Central Florida, a government institution ("**UCF**"), and others to offer COVID-19 testing.

39.   Testing by Aventus and the Laboratories was made available and continues to be available to private individuals, as well as public organizations and institutions including, but limited to, Nemours Children's Hospital, the National Basketball Association ("**NBA**"), the Women's National Basketball Association ("**WNBA**"), World Wrestling Entertainment ("**WWE**"), Major League Soccer ("**MLS**") and the National Football League ("**NFL**").

40.   In total, from the start of the pandemic, Aventus and the Laboratories cumulatively provided COVID-19-related testing services to over 34,000 patients who are insureds, members or beneficiaries of Defendants' health plans or private plans they administer.

41.   Defendants have willfully failed and refused to pay for COVID-19 testing despite Defendants not questioning the quality of the services provided by Aventus or the Laboratories or the accuracy of the test results and despite their undisputed obligation to pay for these tests as more fully set forth below.

42.   Despite Defendants' bad faith in refusing to pay for these testing services, Aventus and the Laboratories have never refused to treat Defendants' insureds, members or beneficiaries. In fact, they were induced to continue performing testing services for Defendants' insureds, members and beneficiaries because Defendants initially paid COVID-19 testing charges during the early stages of the pandemic before they routinely, and without basis, stopped doing so.

43.   The testing services provided by Aventus and the Laboratories are medically necessary and appropriate according to recognized medical standards and standards announced by Congress and the Department of Health and Human Services ("**HHS**").

## FEDERAL LAW REQUIRES DEFENDANTS TO PAY AVENTUS AND THE LABORATORIES FOR OUT-OF NETWORK COVID-19 TESTING

44.   Based on provisions of the FFCRA and the CARES Act, as discussed below, Aventus and the Laboratories had every expectation that Defendants would honor their obligations and reimburse them for the COVID-19-related testing services provided to Defendants' insureds, members and beneficiaries.

45.     Aventus and the Laboratories have been, and continue to be, harmed by Defendants' failure to pay valid claims that they submitted to Defendants for reimbursement for services to Defendants' insureds, members and beneficiaries.

46.     Congress, as well as the Trump and Biden Administrations, have made clear that group and individual health plans and health insurance issuers, like Defendants, must cover and reimburse COVID-19 testing and related services. Such rules have been laid out not just in the text of the FFCRA and CARES Act, but also in a series of "Frequently Asked Questions" issued and publicly posted by HHS.

47.     Defendants' failure to reimburse and/or properly reimburse Aventus and/or the Laboratories for COVID-19 testing services violates these reimbursement rules, as explained in detail below.

48.     Under Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, Defendants must provide benefits for certain COVID-19-related items and services, including COVID-19 testing, furnished beginning March 18, 2020.

49.     Defendants also "must provide this coverage without imposing any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization, or other medical management requirements." See FFCRA, § 6001(a); FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation (hereinafter "**FAQs**"), Part 44, pp. 1-2 (February 26, 2021).

50.   Moreover, the FAQs confirm that plans and issuers are prohibited from imposing specific screening criteria on coverage of COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19. Thus, "[w]hen an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an 'individualized clinical assessment' and the test should be covered without cost sharing, prior authorization, or other medical management requirements." FAQs, Part 44, pp. 2-3.

51.   The CARES Act amendments to the FFCRA specify that insurers and health plans, such as those offered by Defendants, must reimburse any provider of COVID-19 diagnostic testing, whether in-network or OON.

52.   Specifically, Section 3202 of the CARES Act provides that if insurers, like Defendants, "do not have a negotiated rate with such provider, [Defendants] shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website[.]" See CARES Act, § 3202(a)(2), Pub. L. 116-136; see also 42 U.S.C. § 256b Note.

53.   Defendants also have the opportunity, as recognized by the CARES Act, to "negotiate a rate with such provider for less than [the cash price on the

website]," id., but Defendants did not make any effort to, and did not, negotiate a rate with Aventus or the Laboratories.

54. To date, Defendants still have not attempted to negotiate any rate with the Aventus or the Laboratories.

55. In compliance with Section 3202(b)(1) of the CARES Act, Aventus and/or the Laboratories posted on their public website the cash price of its COVID-19 diagnostic test since March 2020. The cash price listed by Aventus and/or the Laboratories has always been $500 per PCR test.

56. Because Defendants have not negotiated a rate with Aventus or the Laboratories (or even attempted to do so), Defendants are obligated to reimburse Aventus and the Laboratories for COVID-19 testing services at a rate of $500 per test, unless reimbursement for the type of claim at issue is adjusted by contract or by statute, which is the case for certain governmental health plan participants.

57. Federal guidance under the FFCRA and CARES Act is also clear that Defendants' obligation extends to a wide array of coverage and testing types.

58. The FFCRA/CARES Act payment rules apply to "group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered health plans)." This definition specifically includes "both insured and self-insured group health plans," including "private

employment-based group health plans (ERISA plans), non-federal governmental plans...and church plans." See FAQs, Part 42, Q1 (April 11, 2020).

59. Defendants' reimbursement obligations also apply to all manner of in vitro COVID-19 diagnostic testing, including serological (otherwise known as "antibody") testing, and tests administered at home through self-collection. See FAQs, Part 42, Q1 (April 11, 2020); FAQs, Part 43, Q4 (June 23, 2020).

60. Based on the above provisions, there can be no debate that federal law requires Defendants to pay for COVID-19 testing services provided by Aventus and the Laboratories and to do so "without imposing any cost-sharing requirements (including deductibles, co-payments and coinsurance), prior authorization or other medical management requirements."  FFCRA Sec. 6001(a).

61. Regulators have even warned that plans and issuers shall not attempt to "limit or eliminate other benefits . . . to offset the costs of increasing the generosity of benefits related to the diagnosis and/or treatment of COVID-19." See FAQs, Part 42, Q9 (April 11, 2020).

62. Defendants' failure and refusal to pay in excess of 34,000 claims is a clear violation of those obligations.

63. Defendants' actions are particularly reprehensible given the increased operational costs and burdens that Aventus and the Laboratories have undertaken to join the State of Florida in the fight against COVID-19.

64.     Aventus and/or the Laboratories remained open and tested thousands of patients during the heart of the pandemic, absorbing increased costs to protect patients and employees, as well as obtaining and providing test results in a timely manner (usually within 48 to 96 hours). To absorb this financial burden without reimbursement is the antithesis of what Congress mandated that health plans must do in the FFCRA and CARES Act.

## DEFENDANTS HAVE WITHHELD PAYMENTS
## FOR COVID-19 TESTING SERVICES IN BAD FAITH

65.     In connection with the COVID-19 diagnostic testing provided to Defendants' insureds, members and beneficiaries, Aventus and the Laboratories timely submitted claims for payment and billed the cash price for the relevant service publicly posted on each their respective websites, as permitted by the CARES Act.

66.     Defendants' behavior with respect to payment to Aventus and the Laboratories for COVID and related testing services has changed dramatically considering that, at the outset of the pandemic in March, April and May 2020, Defendants paid the majority of the claims for testing that Aventus and the Laboratories submitted and Aventus and the Laboratories had no reason to expect that Defendants would begin to deny payments for testing that they provided to Defendants' insureds, members and beneficiaries beginning around June 2020, but that is precisely what happened.

67. For testing provided from June 2020 onward, Defendants have been systematically denying payments for those claims even though Aventus and the Laboratories' testing, billing, documentation and other practices have been the same throughout the COVID-19 pandemic.

68. Instead of issuing payments, and in an apparent effort to avoid paying what the law requires and/or to delay payment for as long as possible, Defendants have elected to send an unreasonable number of requests for clinical records and other supporting documentation for the services that Aventus and the Laboratories provided Defendants' insureds, members and beneficiaries and despite the law barring any "medical management requirements."

69. Defendants have been demanding that Aventus and the Laboratories produce voluminous patient treatment and other records while giving them short response times.

70. Considering the high demand for COVID-19 testing during the pandemic, Defendants were aware, or should have been aware, that Aventus and the Laboratories could not feasibly comply with all of Defendants' requests.

71. For example, Defendants have denied payment for a series of claims and are refusing to pay unless Aventus and the Laboratories produce clinical and operational documentation within thirty (30) days of Defendants' request. This documentation includes physician orders, standing orders, laboratory

requisitions, pathology reports, unspecified "correspondence", patient intake forms, patient initial/visit consultation forms, copies of CLIA certificates, which are publicly available at https://www.cdc.gov/clia/LabSearch.html, identification and credentials for every onsite technical lab staff member, specimen and transport logs, average daily test volumes, average daily send-out test volumes, inspection and proficiency test reports, information for how each testing specimen is received, and COVID-19 testing kits used and photographs of all contents of the kits.

72.   For both COVID-related and non-COVID-related testing, Aventus and the Laboratories do not have ready access to most of the clinical documents requested by Defendants because they are laboratories and not the treating provider and the law does not require a laboratory to maintain these documents.

73.   Although Defendants issue their medical records requests to Aventus and the Laboratories, Aventus and the Laboratories cannot respond to various items in the requests unless they submit requests for these detailed clinical records to the treating providers ordering the tests.

74.   Aventus and the Laboratories have no control over whether other providers will comply with their documentation requests (much less in the 30-day window demanded by Defendants).

75.     Moreover, these treating providers are often themselves within Defendants'
        "network" of participating providers. Accordingly, Defendants – not Aventus or
        the Laboratories - have far greater access to and control over the documents they
        seek because the source of the documents is with Defendants' own participating
        providers.

76.     In Aventus' and the Laboratories' good faith efforts to comply with Defendants'
        verification efforts and requests, Aventus and the Laboratories permitted onsite
        inspections of their respective facilities by Defendants' representatives, and
        further provided Defendants with documentation evidencing their qualifications
        as properly licensed laboratories.

77.     Defendants actually inspected the Laboratories' facilities through their third
        party Special Investigative Unit ("SIU") and obtained records from those
        facilities, which was followed up with an email confirming such visits and
        record production to United's satisfaction.  A copy of said email is attached
        hereto and incorporated herein by reference as Exhibit **"B."**

78.     Regardless of access to records, and as noted above, Defendants' requests
        contravene the instructions in the FFCRA, CARES Act, and follow-on FAQs,
        which make clear that Defendants must reimburse out-of-network laboratories
        without imposing "medical management requirements."

79.     It is therefore, disingenuous, for Defendants to claim that they must review detailed clinical records to determine a patient's symptoms before covering the COVID-19 tests.

80.     Federal guidance provides that, under the FFCRA and CARES Act, plans and issuers cannot "use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing" for asymptomatic patients, and they "cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests." FAQs, Part 44 Q1 (Feb. 26, 2021).

81.     In enacting the FFCRA, Congress prohibited plans and issuers from "impos[ing] any cost sharing . . . requirements or prior authorization or other medical management requirements" in connection with COVID testing. FFCRA § 6601(a).

82.     Defendants' actions in withholding payments on legitimate claims for services Aventus and/or the Laboratories provided and demanding (an unreasonable volume of) documentation are clear violations of, inter alia, Defendants' FFCRA and CARES Act reimbursement obligations.

83.     Defendants' own conduct in paying claims belies their argument that they lack the necessary documentation to pay for COVID tests.

84. Defendants are paying a much higher percentage of the Laboratories' COVID testing claims when the dollars at issue belong to their self-funded plan customers and far fewer claims when it is Defendants themselves that are at risk for the payment.

85. For example, Defendants' abusive requests and pre-payment review processes are far less prevalent when their customers' self-funded plans are involved versus fully insured plans where Defendants' own dollars are at stake.

86. Defendants are acting in bad faith because they simply are trying to reduce their own spend rather than acting out of legitimate concern that Aventus and/or the Laboratories are not properly documenting their reimbursement claims. Otherwise, Defendants would not be paying such a large share of the claims of their self-funded plan customers where Defendants are acting only as administrator.

87. Furthermore, Defendants' legal position is untenable, as they have imposed Do-Not-Pay ("**DNP**") Flags on Plaintiffs, which are clearly arbitrary and capricious and serve no legitimate purpose.

88. The arbitrary and capricious nature of Defendants' actions vis-à-vis Aventus and the Laboratories is further confirmed by Defendants' payment of the Laboratories' claims for COVID-19 testing and related services provided to

Medicaid recipients in Florida, despite its allegations that the Laboratories are essentially sham organizations.

89.   In addition to withholding payment and demanding that Aventus and the Laboratories produce voluminous patient documentation, Defendants have denied COVID claims based on its erroneous determination that a "place of service" (POS) code on the claims is incorrect. Regardless of Defendants' preference for a different POS code, the presence of one POS code or another is immaterial to payment and should not affect whether the claim is reimbursable.

90.   Defendants' position is especially unreasonable given CARES Act guidance requires that Defendants must cover all manner of diagnostic testing, regardless of where performed. See FAQs, Part 43, Q4 (June 23, 2020).

91.   Defendants' refusal to reimburse Plaintiffs for COVID-19 testing services violates the CARES Act, the FFCRA, state law and is otherwise wrongful.

92.   Defendants' abusive records requests and withholding of payments directly violate, among other things, a Congressional mandate requiring insurers and health plans to reimburse in- and OON COVID testing services during the pandemic.

93.   In Florida, Defendants have a duty to acknowledge and promptly adjudicate claims, in addition to their duties to engage in good faith and fair dealing with

regard to the implied contractual relationship that exists between Aventus and
the Laboratories, on the one hand, and Defendants.

94.   Defendants have breached these duties and Aventus and the Laboratories have
suffered damages.

95.   Aventus and the Laboratories have attempted to engage in communications and
discussions with Defendants to resolve the issues short of litigation, including by
telephone and email communications with various employees/representatives of
Defendants, but Plaintiffs have been provided with no other option but to file
suit.

## CLASS ACTION ALLEGATIONS

96.   The Individual Plaintiff, an insured, member or beneficiary under one of
Defendants' group or individual health insurance plans, received COVID-19
testing at one of the Laboratories, but Defendants have not paid for said testing.

97.   The Individual Plaintiff meets all requirements of Fed. R. Civ. P. 23(a) and
23(b).

A. **The Class.**

98.   The Individual Plaintiff brings his claims on his own behalf and on behalf of the
"Class," defined as insureds, participants or beneficiaries in any group or
individual health insurance plan issued, underwritten or administered by one or
more of the Defendants who were denied health insurance coverage for COVID-

19 testing at any time during the period from March 2020 to the present and who paid, or were or are required to pay, for said testing.

99. The Class excludes Defendants, including any entity or division in which any Defendant has a controlling interest, as well as their agents, representatives, officers, directors, employees, trustees, and other entities related to, or affiliated with Defendants, and Class Counsel.

B. **Numerosity**.

100. The members of the Class are so numerous that joinder of all members is impractical.

101. 101.   There are approximately 34,000 clean OON claims submitted by Plaintiffs that remain unpaid and, accordingly, tens of thousands of Class members. The Class is ascertainable because its members can be readily identified using Plaintiffs' and Defendants' claims data.

102. The Class also is described with a discrete set of procedure codes under the Current Procedural Terminology ("CPT") promulgated by the American Medical Association. Accordingly, Class members can be readily and objectively ascertained through use of records maintained by the parties.

103. Finally, the Class members are dispersed geographically such that joinder of all members is impracticable.

C. **Commonality/Predominance of Common Issues**.

104.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3)

because questions of law and fact that have common answers predominate over

questions affecting only individual Class members, which includes the

nonpayment and underpayment of COVID-19 testing, without valid bases.

D. **Typicality**.

105.   The Class Representative's claims are typical of the claims of the Class

members because the Class Representative is an insured, member or beneficiary

of an insurance policy issued by one of the Defendants or is a participant in an

ERISA Plan administered by Defendants, submitted a claim for coverage for

COVID-19 testing, and, like other Class members, Defendants denied the Class

Representatives's claims without any justifiable basis.

E. **Adequacy of Representation**.

106.   The Class Representative will fairly and adequately protect the interests of the

Class. The Class Representative's interests do not conflict with the interests of

the members of the proposed Class.

107.    Further, Plaintiffs have retained counsel who are competent and experienced in

complex and class action litigation, and Plaintiffs have counsel ready and willing

to prosecute this action vigorously on behalf of the Class members and have the financial resources to do so. Neither Plaintiffs nor counsel have any interest adverse to those of the Class members.

F. **Superiority.**

108.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendants.

109.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to the other available methods for the fair and efficient adjudication of this controversy. Questions of law and fact common to the Class members predominate over any questions affecting only individual members.

110.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.

111.   Further, because the unpaid benefits denied Class members are small relative to the expense and burden of individual litigation, it would be next to impossible for the members of the Class to redress individually the harm done to them, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden

imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

112. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and is far better for effectively protecting the rights of each Class member than would piecemeal litigation.

113. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

### COUNT I – VIOLATION OF THE FFCRA AND CARES ACTS

114. Plaintiffs repeat and re-allege each factual allegation contained above as if fully set forth herein.

115. Defendants are health insurance issuers offering group or individual health insurance coverage, as those terms are defined under section 6001 of the FFCRA

116. The COVID-19-related testing services that Aventus and/or the Laboratories provide to health plan members, insureds and beneficiaries constitute in vitro

diagnostic products for the detection of COVID-19 or the diagnosis of the virus that causes COVID–19, as provided by section 6001 of the FFCRA.

117. Aventus and the Laboratories did not, and do not, have a negotiated rate with Defendants for the provision of these services.

118. In compliance with the CARES Act, Aventus and the Laboratories post a cash price for COVID-19 testing on their public website.

119. Under section 3202(a)(2) of the CARES Act, if a health plan, such as Defendants, does not have a negotiated rate with a provider, such as Aventus and the Laboratories, for providing COVID-19 testing related services, the health plan is obligated to pay the provider its posted cash price for providing those services.

120. Despite numerous and persistent demands and requests, Defendants have failed and refused to pay anything remotely close to the Laboratories' cash price for providing the COVID-19 testing related services.

121. Moreover, Defendants have paid nothing for the vast majority of COVID tests that Aventus and/or the Laboratories have provided for Defendants' insureds, members and their beneficiaries.

122. By reason of the foregoing, Plaintiffs have been damaged.

123. Based upon the above, Plaintiffs are entitled to judgment against Defendants in an amount to be determined at the trial of this matter, plus interest thereon,

together with the costs and disbursements of this action, including reasonable attorneys' fees.

## COUNT II - ERISA: FAILURE TO PAY

124.   Plaintiffs repeat and reallege all of their previous factual allegations as if same were fully set forth herein at length.

125.   Aventus and/or the Laboratories have had Defendants' insureds, members and beneficiaries execute AOB forms, assigning their right to payment to the Laboratories.  Plaintiffs, therefore, have standing to assert their claims.

126.   Notwithstanding any anti-assignment clause, the payment to Plaintiffs for the COVID-19 testing is the responsibility of Defendants.

127.   To the extent that Plaintiffs failed to exhaust any internal appeals process, Defendants maintained inadequate claims procedures and/or following those procedures would have been futile considering, among other things, the repeated failure to pay tens of thousands of claims.

128.   Plaintiffs' incurred charges represent its usual and customary reimbursement rates for treatment provided to Defendants' insureds, members or beneficiaries.

129.   Defendants breached the terms of their ERISA health plans, and/or plans for which Defendants act as administrators, by refusing to make OON payments for charges covered by the plans, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

130.    These breaches include, among other things, (a) refusing to reimburse Aventus and/or the Laboratories for the medically necessary services they provided Defendants' insureds, members and beneficiaries as required by the FFCRA and CARES Act; (b) refusing to reimburse Aventus and/or the Laboratories for the medically necessary services that they provided to Defendants' insureds, members and beneficiaries, as required by 29 C.F.R. § 590.715-719A(b)(3)(i)(A)-(C); and/or (c) otherwise refusing to reimburse Plaintiffs the legally required amounts due under the plans for the medically necessary services provided by Aventus and the Laboratories to Defendants' insureds, members and beneficiaries.

131.    Moreover, the Class Representative was required to pay, and did pay, one of the Laboratories for COVID-19 testing after one of the Defendants failed and refused to pay for same.

132.    Similarly, there is a class of persons insured by Defendants who paid, or are required to pay, for COVID-19 testing to providers as a result of Defendants' refusal and failure to pay for said testing.

133.    As a direct and proximate result thereof, Plaintiffs have suffered substantial damages.

134.    Under 29 U.S.C. § 1132(a)(1)(B), Plaintiffs are entitled to recover unpaid/underpaid benefits from Defendants.

## COUNT III - ERISA:  FAILURE TO GIVE FULL AND FAIR REVIEW

135.   Plaintiffs repeat and reallege all of the factual allegations set forth above as if
same were fully set forth herein at length.

136.   As assignees and authorized representatives of their patients' claims, Aventus
and/or the Laboratories are entitled to receive protection under ERISA including
(a) a "full and fair review" of all claims denied by Defendants; and (b)
compliance by Defendants with applicable claims procedure requirements.
Likewise, the Class Representative and putative members of the class also are
entitled to a "full and fair review" of their claims.

137.   For denied claims pursuant to 29 U.S.C. § 1133, an ERISA plan must (a)
provide adequate notice in writing to any participant or beneficiary whose claim
for benefits under the plan has been denied, setting forth the specific reasons for
such denial, written in a manner calculated to be understood by the participant;
and (b) afford a reasonable opportunity to any participant whose claim for
benefits has been denied for a full and fair review by the appropriate named
fiduciary of the decision denying the claim. 29 U.S.C. § 1133(1) and (2).

138.   ERISA regulations make clear that, in the case of post-service claims submitted
pursuant to group health plans, the required notification that the claim has been
denied must be issued within a reasonable period of time, but not later than 30
days after receipt of the claim, unless the member or beneficiary is notified that,

due to circumstances beyond the plan's control, the plan requires an additional 15 days to issue a required denial notification. 29 C.F.R. § 2560-503.1(f)(2)(iii)(B).

139.    Defendants have failed to provide Plaintiffs with a "full and fair review" of their claims, based on imposition of the DNP Flags.

140.    Although Defendants are obligated to provide a "full and fair review" of denied and underpaid claims pursuant to 29 U.S.C. § 1133, Defendants' DNP violated this by, among other things: (a) refusing to provide the specific reason or reasons for the denial or underpayment of claims; (b) refusing to provide the specific plan provisions relied upon to support its denials or underpayments; (c) refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims; (d) refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment codes; (e) refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; (f) refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure; (g) refusing to provide Plaintiffs with the documentation and information relevant to

Defendants' denial of the claims; and (h) refusing to timely issue required notifications that the claims have been denied or underpaid.

141.    By failing to comply with the ERISA claims procedure regulations, Defendants failed to provide a reasonable claims procedure.

142.    Because Defendants have failed to comply with the substantive and procedure requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(I) and 29 C.F.R. § 590.715-2719(b)(2)(ii)(F)(1).

143.    Exhaustion is also excused because it would be futile to pursue any administrative remedies, Defendants do not acknowledge any legitimate basis for their denials and thus offer no meaningful administrative process for challenging their denials.

144.    Plaintiffs have been harmed by Defendants' failure to provide a full and fair review of appeals submitted and failure to comply with applicable claims procedure regulations under ERISA. 29 U.S.C. § 1133.

145.    Plaintiffs are entitled to relief under 29 U.S.C. § 1132(a)(3), to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claim procedure regulations.

## COUNT IV - PROMISSORY ESTOPPEL (NON-ERISA)

146.    Plaintiffs repeat and reallege all of the factual allegations set forth above as if
        same were fully set forth herein at length.

147.    Defendants misrepresented, and continue to misrepresent, on their websites
        and/or elsewhere, their coverage of medically appropriate COVID-19 testing
        with $0 cost-share during the national public health emergency period through
        January 10, 2023 (See https://www.uhc.com/health-and-wellness/health-
        topics/covid-19/coverage-and-resources).

148.    By way of example, but not limitation, Defendants claimed to be working to
        improve access to care and decrease "administrative processes."

149.    In United's Cost Sharing Guidance, it promised to "cover COVID-19 testing for
        all lines of business…"

150.    In yet another publication, Defendants indicated that United would cover
        medically appropriate COVID-19 testing in accordance with applicable law,
        including the CARES Act, and instructed providers not to collect upfront
        payment from members.

151.    Similarly, in United's FAQs regarding claims and appeals, it confirms that for
        plans that do not have OON benefits, United will still pay for testing from an
        OON provider.

152.    By their conduct, Defendants led Plaintiffs to believe that Defendants would pay
        Aventus and/or the Laboratories for COVID testing for their members and

beneficiaries but then refused to issue payments when the bills were submitted by Aventus and the Laboratories.

153.   Defendants knew, or reasonably should have known, that Aventus and the Laboratories would rely on Defendants' representations on their website and elsewhere and compliance with the FFCRA and the CARES Act.

154.   Upon information and belief, Defendants purposefully paid Aventus and/or the Laboratories for testing services at the beginning of the pandemic with the expectation that Aventus and the Laboratories would reasonably rely upon said conduct and continue to provide testing services despite not being timely paid by Defendants.

155.   Aventus and the Laboratories reasonably, but detrimentally, relied on Defendants' conduct by continuing to provide testing services to Defendants' insureds, members and beneficiaries.

156.   Aventus and the Laboratories' reliance on Defendants' misrepresentations and promises caused them to suffer a definite and substantial detriment and caused them damage.

## COUNT V – DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 (NON-ERISA)

157.   The foregoing factual allegations are re-alleged and incorporated by reference as if same were fully set forth herein.

158.   This is a count for declaratory relief pursuant to 28 U.S.C. § 2201.

159.   The FFCRA and the CARES Act require, inter alia, health plans and issuers to cover all Covid Testing services offered by providers, regardless of whether such provider is in network or OON, and without the imposition of medical management and other requirements, and to reimburse OON providers either the cash price for Covid Testing services publicized on their websites or to negotiate an amount less than the cash price to be paid to Plaintiffs.

160.   The CARES Act also directs health plans and issuers to directly reimburse OON providers for their Covid Testing services.

161.   Defendants have engaged in unlawful and suspect conduct to circumvent their obligations to cover bona fide Covid Testing services submitted by Plaintiffs on behalf of insureds, members and beneficiaries of health plans either insured or administered by them, and have failed to reimburse Aventus and the Laboratories, OON providers, in accordance with the aforementioned methodology prescribed by the CARES Act.

162.   Defendants have failed to comply with their obligations to cover Covid Testing services without the imposition of medical management and other requirements, and have failed to reimburse Plaintiffs in accordance with reimbursement methodology prescribed by the CARES Act.

163.    As a result of Defendants' conduct and institutional failures, Plaintiffs have sustained and will continue to sustain damages and have been deprived of and will continue to be deprived of the compensation that Plaintiffs are entitled to for providing bona fide Covid Testing services to members and beneficiaries of health plans either insured or administered by Defendants during this public health emergency.

164.    Plaintiffs are entitled to supplemental relief pursuant to 28 U.S.C. § 2201, including the payment of all money that was not paid by Defendants, either in their capacity as insurers or administrators to Plaintiffs for providing bona fide Covid Testing as described in this Complaint.

## **COUNT VI – UNJUST ENRICHMENT AND QUANTUM MERUIT**

165.    The foregoing factual allegations are re-alleged and incorporated by reference as if same were fully set forth herein at length.

166.    Plaintiffs provided bona fide Covid Testing services to insureds, members and beneficiaries of health plans that Defendants insures and administers.

167.    By providing necessary Covid Testing services throughout the course of the COVID-19 public health emergency to Defendants' insureds, members and beneficiaries, Plaintiffs conferred benefits upon Defendants because Plaintiffs' provision of Covid Testing services facilitated Defendants'

obligation to arrange and pay for Covid Testing services for its insureds, members and beneficiaries.

168.   Additionally, Defendants benefited from the insurance premiums from insureds, members and beneficiaries and the compensation from Employer Plans and other self- funded health plans to facilitate and cover Covid Testing services.

169.   Defendants knew that Plaintiffs provided bona fide Covid Testing services to Defendants' members in satisfaction of Defendants' obligations to their insureds, members and beneficiaries.

170.   Moreover, at all relevant times, Defendants either virtually denied or underpaid Plaintiffs for their bona fide Covid Testing services in contravention of their requirements under the FFCRA and the CARES Act.

171.   Defendants voluntarily accepted, retained and enjoyed, or continue to accept, retain, and enjoy, the benefits conferred by Aventus and the Laboratories, with the knowledge that Aventus and the Laboratories expect and are entitled to for such Covid Testing services.

172.   Despite proper demand being made on Defendants for payment for these services, Defendants failed to reimburse Plaintiffs for the Covid Testing services provided.

173.   Defendants have received and retained benefits and have been unjustly enriched through the use of funds that earned interest or otherwise added to their profits, when said money should have been paid in a timely and appropriate manner to Plaintiffs.

174.   As a result of Defendants' unjust enrichment, Plaintiffs have suffered damages.

175.   As a direct and proximate result thereof, Plaintiffs are entitled to compensatory damages, interest, cost of suits, attorneys' fees and such other relief as the Court deems equitable and just.

## COUNT VII – INJUNCTIVE RELIEF (NON-ERISA)

176.   The foregoing factual allegations are re-alleged and incorporated by reference as if same were fully set forth herein.

177.   Currently, Defendants are wrongfully denying payment in whole or in part for virtually all bona fide Covid Testing service claims submitted during this COVID-19 public health emergency by Aventus and the Laboratories on behalf of insureds, members and beneficiaries of health plans either insured or administered by Defendants.

178.  In failing to make said payments, Defendants have failed and are failing to comply with the FFCRA, the CARES Act, ERISA, the terms of the health plans, and other applicable federal and state laws.

179.  Furthermore, as detailed throughout this Complaint, Defendants have engaged in unscrupulous and fraudulent conduct to circumvent their obligations to adjudicate and reimburse Plaintiffs for bona fide Covid Testing services.

180.  Unless enjoined from doing so, Defendants will continue to operate their fraudulent schemes and meritless claims and appeals processes and fail to comply with all applicable authorities to the substantial detriment of Plaintiffs, insureds, members and beneficiaries of health plans insured or administered by Defendants.

181.  A monetary judgment in this case will only compensate Plaintiffs for past losses and will not stop Defendants from continuing to engage in unscrupulous and fraudulent conduct and to convert assets which are necessary for Plaintiffs to maintain their laboratories.

182.  Plaintiffs have no practical or adequate remedy, either administratively or at law, to avoid these future losses.

183.  Plaintiffs are entitled to a permanent injunction requiring Defendants to comply with the requirements of the FFCRA and the CARES Act for Covid

Testing claims submitted on behalf of insureds, members and beneficiaries of plans that are insured by Defendants or with regard to self-funded plans administered by Defendants.

## COUNT VIII – VIOLATION OF FLORIDA'S UNFAIR TRADE PRACTICES ACT ("FDUTPA")

184.   Plaintiffs repeat and reallege all of their previous factual allegations as if same were fully set forth herein at length.

185.   Defendants engaged in trade or commerce by marketing and issuing health insurance and administering group health plans and through its wholly-owned subsidiaries, UHCS, NHP and Optum, and they engage in similar trade and commerce by marketing and issuing health insurance and administering group health plans with sponsors located in the State of Florida.

186.   Defendants breached the terms of their health plans by refusing to make out-of-network payments to Plaintiffs for charges covered by the plans, in violation of, inter alia, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and said conduct is unfair and deceptive under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq.

187.   In light of Defendants' statutory and/or non-statutory obligations to pay for out-of-network COVID-19 tests, Defendants' conduct has misled Plaintiffs and is

likely to continue to mislead other consumers of their services and their requirement to pay for COVID-19 tests.

188.    Defendants' conduct, as aforesaid, has caused Plaintiffs to suffer actual damages, and as a direct and proximate result of Defendants' scheme, Plaintiffs have not received reimbursements that they are entitled to receive by law.

189.    Defendants' conduct also violates public policy in that it deters individual Plaintiffs from seeking COVID-19 tests, and the Laboratories from offering COVID-19 tests to individuals who are insured by Defendants.

190.    Defendants have, therefore, violated the FDUTPA.

191.    Defendants' conduct was willful, wanton, malicious and/or in reckless disregard of Plaintiffs' rights.

**WHEREFORE**, Plaintiffs request judgment against Defendants jointly, severally and/or in the alternative, as follows:

(i)      Compensatory damages;

(ii)     Punitive, treble, liquidated and/or consequential damages;

(iii)    Declaring that Defendants violated their statutory obligations to process Covid Testing claims in accordance with the Section 6001 of the FFCRA and Section 3202(a) of the CARES Act;

(iv)    For an order compelling Defendants as insurers or administrators to pay for all current and future COVID-19 testing costs required by law and incurred by Plaintiffs;

(v)     Interest;

(vi)    All costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

(vii)   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

MANDELBAUM BARRETT P.C.

/s/ _____

Steven W. Teppler, Esquire
FL Bar No. 14787
2385 NW Executive Center Drive,
Suite 100
Boca Raton, Florida 33431
Email: steppler@mblawfirm.com
Phone: 646.946.5659
Steven I Adler, Esquire*
3 Becker Farm Rd
Suite 105
Roseland, NJ 07086
Phone 973.736.4600
Email: sadler@mblawfirm.com

*Pro Hac Vice to be submitted

*Counsel for Plaintiffs*