## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**AVENTUS HEALTH, LLC, ABL MEDICAL CARE, LLC, KD MEDICAL CHOICE, LLC, RD HEALTH DIAGNOSTICS, LLC and SEAN M BYGRAVE,**

            **Plaintiffs,**

**v.**                        **Case No: 6:22-cv-2408-PGB-EJK**

**UNITEDHEALTHCARE, INC., UNITEDHEALTHCARE SERVICES, INC., OPTUMHEALTH CARE SOLUTIONS, INC. and NEIGHBORHOOD HEALTH PARTNERSHIP, INC.,**

            **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendants United Healthcare, Inc., UnitedHealthcare Services, Inc., OptumHealth Care Solutions, Inc., and Neighborhood Health Partnership, Inc.'s (collectively, the "**Defendants**" or "**United**") Motion to Dismiss (Doc. 32 (the "**Motion**")) and Plaintiffs' response thereto (Doc. 54 (the "**Response**")). Upon consideration, the Motion is due to be granted in part and denied in part.

## I.    BACKGROUND[1]

This case stems from an allegation that Defendants intentionally failed to reimburse Plaintiffs Aventus Health, LLC ("**Aventus**"), ABL Medical Care, LLC ("**ABL**"), KD Medical Choice, LLC ("**KD**"), RD Health Diagnostics, LLC ("**RD**"), and Sean M. Bygrave (collectively, the "**Plaintiffs**") for testing expenses incurred from the COVID-19 pandemic. (Doc. 2 (the "**Complaint**"), ¶ 16).

After the outbreak of COVID-19, Congress took particular measures to require health plans and health insurance issuers like Defendants to cover and pay the cost of COVID testing as a mechanism to combat the pandemic. (*Id.* ¶ 18). Congress prohibited health plans and health insurance companies from imposing any prior authorization or other medical management requirements on testing for COVID-19 diagnoses, regardless of whether the test was within or out-of-network. (*Id.* ¶ 19). Plaintiffs allege that Defendants failed to pay over 34,000 claims for COVID-19 diagnostic testing that Plaintiffs provided and continue to provide to Defendants' members and beneficiaries. (*Id.* ¶ 20). Of note, Plaintiffs do not specify which of these claims are based on employment-related insurance policies and which are not.[2] (*Id.*). Defendants also allegedly continue to engage in bad faith practices by enacting barriers to payment. (*Id.* ¶ 21). Specifically, Defendants have set up complex processes and procedures to deny or underpay claims for arbitrary

---

[1]    This account of the facts comes from Plaintiffs' Complaint. (Doc. 2). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

reasons and delegitimized their administrative appeal procedures unscrupulously. (*Id.* ¶ 22).

ABL, RD, and KD (collectively, the "**Laboratories**") are all Florida-based independent medical laboratories that offer various diagnostic services. (*Id.* ¶¶ 23–25). Defendants are in the business of issuing group and individual health insurance coverage and administering private employment-based group health plans and non-federal governmental plans, such as plans sponsored by states and local governments, for their insureds, plan members, and beneficiaries within Florida. (*Id.* ¶ 26). Defendants are required to make benefit payments from their own assets or the assets of the relevant plan when a plan beneficiary obtains covered services. (*Id.* ¶ 27). Aventus and the Laboratories do not have a contract with Defendants, meaning that they are not obligated to accept unfairly low reimbursement rates for services provided to Defendants' insured, members or beneficiaries. (*Id.* ¶ 28).

Aventus and the Laboratories were considered non-participating or out-of-network ("**OON**") for reimbursement purposes. (*Id.* ¶ 29). As OON providers these parties obtain an assignment of benefits (an "**Assignment**") from Defendants' insured, members and beneficiaries. (*Id.* ¶ 30). These Assignments grant the aforementioned parties the right to receive direct payments owed to Defendants' insured, members and beneficiaries. (*Id.* ¶ 31).

Since the start of the pandemic, Aventus and the Laboratories have offered COVID-19 testing and subsequently began to offer antibody testing. (*Id.* ¶ 35).

They have offered testing services 24 hours a day, seven days a week to help maximize detection efficiency. (*Id.* ¶ 37). In total, Aventus and the Laboratories cumulatively provided testing related services to over 34,000 patients who are insured, members, or beneficiaries of Defendants' health plans or private plans they administer. (*Id.* ¶ 40). However, Plaintiffs allege that Defendants have willfully failed and refused to pay for testing without having questioned the quality of services provided. (*Id.* ¶ 41). Plaintiffs assert Congress's plain mandate that Defendants must reimburse any provider of COVID-19 diagnostic testing, whether in-network or OON. (*Id.* ¶ 51). Plaintiffs also point out that Defendants were afforded the right to negotiate a lesser rate for reimbursement with the parties but did not attempt to do so at any point. (*Id.* ¶¶ 53, 54).

Instead, Defendants have elected to send an unreasonable number of requests for clinical records and other supporting documentation for the services that Aventus and the Laboratories provided while also demanding that these responses be turned around in a short period of time. (*Id.* ¶¶ 68, 69). Moreover, the Laboratories respond to various requests without submitting requests of their own for detailed clinical records to the treating providers ordering the tests. (*Id.* ¶ 73). Plaintiffs allege that, in certain cases, Defendants, despite their requests for records, have superior access to these records than do Plaintiffs. (*Id.* ¶ 75).

Defendants have also placed "Do-Not-Pay" Flags on Plaintiffs and erroneously denied claims based on the purportedly incorrect "place of service"

code on their claims. (*Id.* ¶¶ 87, 89). Plaintiffs allege that this violates their implied contract with Defendants pursuant to Florida law. (*Id.* ¶ 93).

Plaintiffs accordingly filed suit, raising several causes of action in their Complaint. (*See generally id.*). Count I is a claim for a violation of the Families First Coronavirus Response Act ("**FFCRA**") and the Coronavirus Aid, Relief, and Economic Security Act ("**CARES Act**"). (*Id.* ¶¶ 114–123). Count II is a claim for a failure to pay under ERISA law. (*Id.* ¶¶ 124–134). Count III is a claim for failure to give full and fair review under ERISA law. (*Id.* ¶¶ 135–145). Count IV is a claim for promissory estoppel. (*Id.* ¶¶ 146–156). Count V is a claim for declaratory judgment. (*Id.* ¶¶ 157–164). Count VI is a claim for unjust enrichment and quantum meruit. (*Id.* ¶¶ 165–175). Count VII is a claim for injunctive relief. (*Id.* ¶¶ 176–183). Count VIII is a claim for a violation of Florida's Unfair Trade Practices Act ("**FDUPTA**"). (*Id.* ¶¶ 184–191).

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

The Court will address each claim in turn.

### A.   ERISA versus non-ERISA claims and Preemption

As a threshold matter, the Court must assess the underlying nature of the 34,000 claims at issue in this case. (Doc. 2, ¶ 20). As stated above, Plaintiffs do not specify which of these claims stem from insurance policies that are based on employment policies, and which are based on private or other kind of policies. (*See generally id.*). This ambiguity must be cured before trial.

Specifically, the claims from this potential pool of 34,000 that fall under ERISA law fail—as the Court discusses below. Defendant is correct that those claims that are within the scope of ERISA law are preempted insofar as Plaintiffs

also attempt to seek recovery under state law causes of action, which the Court addresses in greater detail below. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990). Thus, the only claims that can potentially survive are those that Plaintiff can replead with a showing both that they are not based on ERISA law, due to the nature of the insurance policy implicated, and that have valid bases under state law. Accordingly, each Plaintiff will, at minimum, need to replead sufficiently to make a showing that at least some of their claims are not rooted in ERISA law in order to avoid preemption.[3] The Court separately addresses the merits of these non-preempted claims below.

### B.    Count I: Violation of the FFCRA and the CARES Act

The Court finds that Plaintiffs' first claim for relief is due to be dismissed with prejudice.

Plaintiffs allege that Defendants violated the FFCRA and CARES Act in refusing to reimburse them appropriately for their services. (Doc. 2, ¶¶ 114–123). In response, Defendants argue that Congress did not bestow a private right of action under these two acts, rendering Plaintiffs' claim futile. (Doc. 32, p. 7).

A cursory review of other courts' jurisprudence on this issue reveals the extent to which courts have almost uniformly accepted Defendants' argument in this specific context. *See Murphy Med. Assocs., LLC v. Centene Corp.*, No. 22-CV-

---

[3] For the reasons discussed below, the Court notes for clarity's sake that Plaintiffs will only have the opportunity to replead with respect to their promissory estoppel and FDUPTA claims given that their other state law claims fail for separate reasons.

504-VLB, 2023 WL 2384143, at *6 (D. Conn. Mar. 6, 2023)[4] ("Virtually every district court that addressed whether the FFCRA and CARES Act provides a private right of action in cases such as this—where a health care provider sues an insurer for violating these provisions by failing to pay claims for COVID-19 testing and related services—have all concluded that the Acts do not provide a private right of action.") (citations omitted).

The Court does not find that Plaintiffs have demonstrated any reason compelling enough to break away from what seems to be largely settled law on this matter. *Id.* Accordingly, Plaintiffs' first claim for relief does not withstand Defendants' Motion.

### C. Counts II & III: Failure to Pay (ERISA) & Failure to Give Full and Fair Review

The parties dispute what the Court must consider as its first inquiry into these claims: whether each of the parties has standing under ERISA law. Upon review, the Court finds that Aventus and Laboratories do not have standing in this context.[5]

An injury sufficient for standing purposes is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

---

[4]   Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[5]   Absent standing, the Court need not analyze all of Plaintiffs' remaining contentions, as the Court finds some of Defendants' arguments to be dispositive of the claims at bar.

imminent, not conjectural or hypothetical." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (citation omitted). "Under ERISA, a 'participant' is 'any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.'" *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001).

Healthcare providers typically are not considered beneficiaries and therefore have no standing to sue under ERISA law. *La Ley Recovery Sys.-OB, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 14-23417-CIV, 2014 WL 5523147, at *2 (S.D. Fla. Oct. 31, 2014) (citing *Borrero v. United Health Care of N.Y., Inc.,* 610 F.3d 1296, 1301 (11th Cir.2010)). An exception to this rule is when providers gain standing to sue derivatively because they were able to obtain a written assignment of claims from a patient or beneficiary with standing to sue under ERISA law. *Borrero*, 610 F.3d at 1302. An anti-assignment clause cannot be considered valid if it is unambiguous. *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004). An anti-assignment clause can be considered ambiguous if reasonable people could disagree as to the meaning or effect of the clause's provisions. *See Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir. 1990).

### a.   *Plaintiffs Aventus and the Laboratories*

#### (1)   *Anti-Assignment Clause*

Defendants argue that Aventus and the Laboratories do not have standing under ERISA law because they are healthcare providers that did not receive written assignments from the patients or beneficiaries who did have standing. *Borrero*, 610 F.3d at 1302.

Plaintiffs argue in response that Defendants' anti-assignment clause was ambiguous and therefore not valid. (Doc. 54, p. 7); *Physicians Multispecialty Grp.*, 371 F.3d at 1295. The Court disagrees. Attempting to distinguish the anti-assignment clause here from other entities' clauses that were analyzed by the Eleventh Circuit, Plaintiffs argue that the relevant clause in this case "does not even attempt to describe what type or form of consent must be given." (Doc. 54, p. 8). The parties agree that the anti-assignment clause here expressly states that parties will not be able to re-assign their benefits "without consent." (*Id.* at p. 6). The Court finds that no person could reasonably construe this phrasing to suggest anything other than a need for consent—the Court is unconcerned with the extent thereafter to which this principle is described.[6] Moreover, Plaintiffs have failed to allege that

---

[6] Plaintiffs nonetheless attempt to save their arguments by claiming that Defendants impliedly waived their anti-assignment clauses through their conduct, relying on *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 CIV. 8517 BSJ AJP, 2012 WL 4840807, at *1 (S.D.N.Y. Oct. 4, 2012). There, where the defendant had not specified the type of consent required in its assignment clause, the court held that an insurance company's "long-standing pattern and practice of direct payment to [the plaintiff] is sufficient to show its consent to [the plaintiff's] assignment." *Id.* at *4. Even if the Court were sufficiently persuaded by this non-binding precedent, the outcome would remain unchanged given Plaintiffs' failure to exhaust their administrative remedies, which the Court discusses separately.

the patients for whom they are suing derivatively were themselves employees and therefore privy to standing under ERISA law. *Borrero*, 610 F.3d at 1302. The Court will not assume that every person who received a COVID test as it relates to the case at bar was necessarily an employee of some kind. This issue raises yet another challenge for Plaintiffs.

(2)    *Failure to Exhaust Administrative Remedies*

Furthermore, even if Defendants did hypothetically waive their assignments, Plaintiffs fail to jump through a different hurdle to show that they have standing. Specifically, Plaintiffs have failed to demonstrate that they exhausted their administrative remedies prior to bringing suit in federal court. (*See generally* Doc. 2).

To bring a claim under ERISA law in the Eleventh Circuit, plaintiffs must properly plead that they exhausted their administrative remedies before filing suit in federal court. *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992). There are two exceptions to this requirement: 1) when it would be futile to pursue these administrative remedies, and 2) where a claimant is denied meaningful access to the administrative review scheme in place. *Izydorek v. Unum Grp.*, No. 20-cv-247, 2020 U.S. Dist. LEXIS 155367, at *7 (M.D. Fla. Aug. 26, 2020).

Both the Eleventh Circuit and at least one other Circuit have held that a plaintiff's failure *to attempt*, at the very least, to exhaust administrative remedies can present a bar to a claim that pursuit of such remedies would have been futile. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1319 (11th Cir. 2000) (holding that

"because none of the [a]ppellants even pursued the grievance and arbitration procedure available, at least, in theory . . ." the appellants' "futility objections . . . [were] merely theoretical, if present at all, and therefore do not justify [a]ppellants' excusal from the exhaustion requirement"); *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 251–52 (3d Cir. 2002) (holding that the district court did not abuse its discretion in refusing to apply the futility exception to the exhaustion doctrine because the plaintiff in those circumstances did not sufficiently attempt to exhaust his remedies).

Here, while Plaintiffs list a number of Defendants' actions that they claim frustrated their ability to recoup their claims, Plaintiffs also overtly concede that they did not even attempt to engage in the administrative process. (Doc. 2, ¶ 140; Doc. 54, p. 13). Defendants' resistance to pay is not a sufficient reason to obviate the administrative scheme set up without even trying in the first place; otherwise, federal courts would open the door to excessive litigation that could have and should have been resolved—or at least attempted to be resolved—beforehand. Accordingly, the Court agrees with Defendants that Aventus's and the Laboratories' ERISA claims would be barred even if they could show that they had standing to sue under ERISA. (Doc. 32, p. 12). These Plaintiffs' claims are thus due to be dismissed with prejudice.

### b.   *Plaintiff Sean M. Bygrave*

The Court finds that Plaintiff Sean M. Bygrave has similarly not shown that he has standing to pursue a claim under ERISA law. Nowhere in the Complaint is

there a showing that Plaintiff Bygrave was insured through his employer or that he personally sought to exhaust his administrative remedies, both of which preclude a claim for relief under ERISA law. *Hobbs*, 276 F.3d at 1241; (Doc. 2, ¶¶ 7–8). The Court also finds that said Plaintiff has not alleged any particularized injury—the Complaint does not show that he had to pay for any COVID testing or that he suffered monetarily in any way. (*Id.*); *Billups*, 554 F.3d at 1350. Accordingly, absent additional allegations, Plaintiff's ERISA claims are also due to be dismissed with room for repleader if Plaintiff can make the necessary showings for his claims.[7]

### D.   Counts IV: Promissory Estoppel

#### a.   *Plaintiffs Aventus and the Laboratories*

The Court finds that Plaintiffs may have a claim for promissory estoppel but only to the extent, as discussed above, that they can anchor their cause of action on claims that can be shown not to be preempted under ERISA law. Until they can make such a showing, these claims are due to be dismissed with room for repleader.

In the Eleventh Circuit, a claim for promissory estoppel requires the following elements: "(1) a promise made by the promisor; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the

---

[7]   The Court also cautions Plaintiffs to consider the implications of making Plaintiff Bygrave a class representative if he is in fact a plaintiff who is suing on grounds outside of ERISA law, as he still would be unable to bring claims on behalf of plaintiffs whose insurance policies implicate ERISA law. *McClendon*, 498 U.S. at 140.

promise; (3) that in fact induced such action or forbearance; and (4) that injustice can be avoided only by enforcing the promise." *Adria MM Prods., Ltd. v. Worldwide Entm't Grp., Inc.*, No. 17-21603-CIV, 2018 WL 4268886, at *8 (S.D. Fla. Sept. 6, 2018). A claim for promissory estoppel can be based on what would be considered reasonable reliance under the totality of the circumstances and does not require an express statement including the explicit term "promise." *See Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 475 (E.D. Pa. 2019) (holding that, given the totality of the circumstances present, plaintiff still sufficiently pled a claim for promissory estoppel even though the defendant had not specifically promised to complete the agreement at issue).

Defendants argue that Plaintiffs' claim should fail here because Plaintiffs have not alleged any promise or even any representation that United made to Plaintiffs. (Doc. 32, p. 17).

The Court does not find this to be the case. Instead, Plaintiffs make several allegations that, taken together, form a proper basis for a promissory estoppel claim that warrants discovery. (Doc. 2, ¶¶ 147, 150). Specifically, Plaintiffs allege that "Defendants misrepresented, and continue to misrepresent, on their websites and/or elsewhere, their coverage of medically appropriate COVID, their coverage of medically appropriate COVID-19 testing with $0 cost-share during the national public health emergency period through January 10, 2023." (*Id.* ¶ 147). Plaintiffs additionally allege that "[i]n yet another publication, Defendants indicated that United would cover medically appropriate COVID-19 testing in accordance with

applicable law, including the CARES Act, and instructed providers not to collect upfront payments from members." (*Id.* ¶ 150). Of note, Plaintiffs point out Defendants' "pattern and practice accepting COVID-19 testing claims submitted directly by the Laboratories, and then paying some of those claims over a period of many months" as well as the fact that Defendants paid out some of these claims over a period of many months. (Doc. 54, p. 9).

Taken together and as true, the Court finds that these allegations suffice to show a colorable claim for promissory estoppel. At minimum, the Court requires discovery to determine the precise nature of the statements made by Defendants—as it may be for the jury to determine whether these statements were reasonably relied upon by Plaintiffs given the pandemonium created by the pandemic, the reactions of Congress, and the actions of Defendants in terms of the payments they were choosing to render. However, because Plaintiffs have not specified which of their claims are rooted outside ERISA law, they must replead to that end.

### b.   *Plaintiff Sean M. Bygrave*

Plaintiff Sean M. Bygrave, however, has not pled that he relied on any of Defendants' representations to his detriment. (Doc. 2, ¶¶ 146–56); *Adria*, 2018 WL 4268886, at *8. Accordingly, his claim is due to be dismissed without prejudice.

### E.   **Counts V: Declaratory Judgment**

The Court does not find that it is appropriate to consider Plaintiff's claim for declaratory judgment at this phase in the litigation. It is thus due to be dismissed.

District courts have discretion to afford declaratory judgment; this discretion is not obligatory. *See Lorini v. Progressive N. Ins. Co.*, No. CIV. A. 08-1363, 2008 WL 5216649, at *1 (W.D. Pa. Dec. 12, 2008); *see also State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). Further, duplicative requests for declaratory judgment should not survive a motion to dismiss; a plaintiff has the burden of showing how the declaratory relief sought would be distinct from what would be gained by findings of liability on the other substantive claims at bar. *See Hannon v. Delaware Am. Life Ins. Co.*, No. 614CV301ORL40KRS, 2014 WL 12618716, at *3 (M.D. Fla. Oct. 2, 2014) ("Where victory on a declaratory judgment claim would not provide 'relief above and beyond' the relief afforded by victory on the breach of contract claim, the declaratory judgment claim should be dismissed.").

Here, the Court does not find that Plaintiffs have alleged how declaratory judgment would afford relief wholly distinct from the relief they would receive from prevailing on their other substantive claims. *Hannon*, 2014 WL 12618716, at *3. Accordingly, Plaintiffs' request for declaratory judgment is due to be dismissed with prejudice.

### F.     Counts VI: Unjust Enrichment and Quantum Meruit

#### a.     *Plaintiffs Aventus and the Laboratories*

Plaintiffs' claim for unjust enrichment and quantum meruit cannot survive. To state a claim for unjust enrichment, Plaintiffs must show that (1) they conferred a benefit on Defendants; (2) Defendants had knowledge of the benefit; (3)

Defendants accepted or retained the benefit; and (4) it would be inequitable for Defendants to retain the benefit without paying fair value for it. *See Surgery Ctr. Of Viera, LLC v. Meritain Health, Inc.*, 2020 WL 7389987, at *11 (M.D. Fla. June 1, 2020), *report and recommendation adopted*, 2020 WL 7389447 (M.D. Fla. June 16, 2020). The benefit conferred must be direct rather than indirect. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming district court's decision to dismiss the plaintiffs' unjust enrichment claim because a third party had conferred the benefit onto the defendant rather than the plaintiffs themselves). "Courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds." *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 22-CV-00064 (KAD), 2023 WL 2631811, at *6 (D. Conn. Mar. 24, 2023) (citations omitted).

Here, Defendants correctly argue that Plaintiffs did not directly confer a benefit on Defendants but rather onto the patients, rendering an unjust enrichment claim untenable in this instance. *Virgilio*, 680 F.3d at 1337. The Court does not find that it has been presented with any extenuating circumstances that would support a departure from what is well-settled law in this context. *Murphy Med.*, 2023 WL 2631811, at *6. Accordingly, Plaintiffs' unjust enrichment claim is due to be dismissed with prejudice.

b.    *Plaintiff Sean M. Bygrave*

Similar to his claim for promissory estoppel, Plaintiff Sean M. Bygrave has failed to plead that Defendants were unjustly enriched at his expense. *Id.*; (*see generally* Doc. 2). It is thus due to be dismissed without prejudice with room for repleader.

## G.    Count VII: Injunctive Relief

Defendants' request for injunctive relief is not appropriately pled at this juncture.

A preliminary injunction is "an extraordinary and drastic remedy" and should be granted only when the movant clearly carries the burden of persuasion as to each of the four prerequisites. *Jackson v. Najarian Cap. LLC*, No. 17-CV-191-MHC, 2017 WL 8219037, at *1 (N.D. Ga. Feb. 7, 2017) (citations omitted). In order to obtain preliminary injunctive relief, a litigant must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the injunction is not granted; (3) that the threatened injury to Plaintiff absent an injunction outweighs the damage to Defendants if an injunction is granted; and (4) that granting the injunction would not be adverse to the public interest. *Id.* When a request for injunctive relief is based solely on allegations from a complaint, a court should not grant such a request without an offer of additional evidence on which to base the relief. *Dunn v. Warden Ware State Prison*, 644 F. App'x 898, 900 (11th Cir. 2016) (citation omitted) ("Because the complaint was not verified, its allegations could not be considered evidence supporting injunctive

relief, and the defendants had not admitted any of the allegations that might have made out a case for preliminary injunctive relief. Without admissions, evidence, or a request for an evidentiary hearing, there was nothing on which to base relief."); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998) (holding that where the necessary facts are contested and credibility determinations must be made, relief cannot be granted without an evidentiary hearing).

Here, like the plaintiff in the *Dunn* court, Plaintiffs seek injunctive relief absent a separate motion for a preliminary injunction or a showing of the requirements necessary to obtain one. 644 F. App'x at 900. Accordingly, this request is due be denied.

### H.    Count VIII: FDUPTA

The Court finds that Plaintiffs' FDUPTA claim is due to be dismissed without prejudice.

To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Courts in this district differ on whether a claim for relief under FDUTPA must also meet Rule 9(b)'s heightened pleading standard. *Compare Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1021–22 (M.D. Fla. 2019) ("As a threshold matter, this Court declines to impose the

heightened pleading standard set forth in Rule 9(b)[.]"), *with Blair v. Wachovia Mortg. Corp.*, No. 11-cv-566-RBD-TBS, 2012 WL 868878, at \*3 (M.D. Fla. Mar. 14, 2012) ("[T]his Court concludes that where the gravamen of the [FDUTPA] claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply."). The heightened pleading standard requires particularity, which must include "facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, No. 10–15406, 2012 WL 555200, at \*4 (11th Cir. Feb. 22, 2012) (citing *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.2009) (internal quotation marks omitted) (citations omitted)).

Defendant urges this Court to consider Plaintiffs' FDUPTA claim under the heightened pleading standard and argues that, under this standard, Plaintiffs' claim is insufficiently pled. (Doc. 32, p. 22). Plaintiffs did not respond to Defendants' argument concerning the standard under which a FDUPTA claim should be pled. (Doc. 54, p. 21). Accordingly, the Court construes Plaintiffs' failure to respond as a concession to Defendants' argument and therefore finds that in this instance it is more appropriate to apply the heightened pleading standard to Plaintiffs' FDUPTA claim. To that end, the Court agrees with Defendants that Plaintiffs have not sufficiently pled their claim. (*See generally* Doc. 2). In particular, Plaintiffs have not afforded this Court details that include the "time, place and substance" of Defendants' conduct with enough detail to meet this

heightened standard. *U.S. ex rel. Matheny*, 2012 WL 555200, at \*4. Plaintiffs' FDUPTA claim is therefore dismissed with room for repleader if they can comport with the requirements set forth under the heightened pleading standard and the showing that they are in fact bringing their claims on behalf of non-ERISA plaintiffs.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 32) is **GRANTED IN PART AND DENIED IN PART** such that:

   a.   Count I is **DISMISSED WITH PREJUDICE**;

   b.   Count II and Count III are **DISMISSED WITH PREJUDICE** with respect to Plaintiffs Aventus and the Laboratories and **DISMISSED WITHOUT PREJUDICE** with respect to Plaintiff Sean M. Bygrave;

   c.   Count IV is **DISMISSED WITHOUT PREJUDICE**;

   d.   Count V is **DISMISSED WITH PREJUDICE**;

   e.   Count VI is **DISMISSED WITH PREJUDICE** with respect to Plaintiffs Aventus and the Laboratories and **DISMISSED**

**WITHOUT PREJUDICE** with respect to Plaintiff Sean M. Bygrave;

f.      Count VII is **DISMISSED WITHOUT PREJUDICE**;

g.      Count VIII is **DISMISSED WITHOUT PREJUDICE**;

h.      On or before September 22, 2023, Plaintiffs may file an Amended Complaint consistent with the directives of this Order and Rule 11. Failure to timely file an amended complaint will result in dismissal with prejudice of the aforementioned claims denied without prejudice in this Order for Plaintiffs' respective causes of action.

**DONE AND ORDERED** in Orlando, Florida on September 8, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties